IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WEBB,<br><br>        Plaintiff,<br><br>  v.<br><br>CITY AND COUNTY OF SAN FRANCISCO ET. AL.,<br><br>        Defendants.<br>_____/ | No. C 11-00476 CRB<br><br>**ORDER GRANTING SUMMARY JUDGMENT** |

      Plaintiff has brought various section 1983 and state law claims against the City of San Francisco, San Francisco District Attorney and several Assistant District Attorneys, and two San Francisco police officers, in two related cases. Plaintiff's claims arise out his arrest for assaulting a police officer and resisting arrest. In this case directed at the police officers, Plaintiff's main claims are that he was unlawfully arrested, and that the officers used excessive force. The police officer Defendants move for summary judgment as to all claims. The Court GRANTS the Motion in its entirety.

**I.    FACTUAL BACKGROUND**

      On October 21, 2009, Officers Herbert and Dudy responded to a call regarding a trespasser on the premises at the Vincent Hotel, a single room occupancy hotel located at 459 Turk Street in the Tenderloin district of San Francisco. Declaration of Shane Herbert in support of Mot. for Summary Judgment ("Herbert Decl.") (dkt. 66) ¶¶ 4, 11; Declaration of

Patrick Dudy in support of Mot. For Summary Judgment ("Dudy Decl.") (dkt. 66) ¶ 4.[1] Plaintiff states, and the Officers do not appear to contest, that the original call regarding a trespasser did not involve Plaintiff. Opp'n at 1-2.[2] When Defendants arrived at the Vincent Hotel, they met an individual named Maria Maya in the hotel lobby. Herbert Decl. ¶ 4; Dudy Decl. ¶ 4. It does not appear that Ms. Maya was involved in the original call that brought the officers to the hotel. Defendants had previously been called to the Vincent Hotel two weeks earlier, on October 14, 2009. Herbert Decl. ¶¶ 2-3; Dudy Decl. ¶¶ 2-3. On October 14, Ms. Maya reported to the Officers that Plaintiff Webb had threatened her and physically assaulted her. Id. On that occasion, Officers Herbert and Dudy were unable to locate Plaintiff on the premises to question him about this alleged incident. Id. At that time, Officer Herbert advised Ms. Maya to obtain a civil restraining order against Plaintiff. Id. Officer Herbert completed a police report documenting the incident. Id.

When Ms. Maya intercepted the Officers on October 21, 2009, she stated that she had obtained the restraining order against Plaintiff, and that Plaintiff had again threatened her and violated that restraining order. Herbert Decl. ¶ 4; Dudy Decl. ¶ 4. She stated that Plaintiff was upstairs. Id. Plaintiff was also a resident at the Vincent Hotel. Ms. Maya presented Defendants with court papers regarding the restraining order against Plaintiff. Herbert Decl.

---

[1] The Herbert and Dudy declarations actually state the date as October, 21, 2011. See, e.g., Herbert Decl. ¶ 4. As there is not a dispute as to when the events at issue took place, the Court disregards this likely inadvertent error.

[2] Plaintiff also states the officers were originally called to the hotel to escort an unauthorized female visitor from the premises in his "Separate Statement of Undisputed Material Facts in Opposition to Defendants' Motion for Summary Judgment." Dkt. 89. Defendants argue the Court should disregard this document, along with Plaintiff's "Statement of Issues Not to be Decided," dkt. 88, and items submitted for judicial notice, dkt. 94-95. Reply at 8. Defendants argue: (1) Local Rule 56-2(a) states "[u]nless required by the assigned Judge, no separate statement of undisputed facts or joint statement of undisputed facts shall be submitted," and thus, the filing is not permitted; (2) there is no authority for submission of a "Statement of Issues Not to be Decided"; and (3) Exhibits A, B, C, D, and I to Plaintiff's Request for Judicial Notice are improper because Plaintiff appears to offer them to support facts reasonably subject to dispute and has not laid any foundational support for such documents. Defendants are correct on each of these points. Moreover, the Statement of Undisputed Facts does not actually contain undisputed facts. Thus, the Court must disregard these filings. In addition, several of the documents in the Request for Judicial Notice are already in the record in the form of exhibits to declarations that can properly be considered by the Court. Finally, the Court has examined the filings, and nothing in the filings would change the reasoning and outcome of the case, even if the Court did take official notice of them.

2

1  ¶¶ 4, 11; Dudy Decl. ¶¶ 4, 9. Also included in the papers provided by Ms. Maya was a
2  restraining order against another individual named Mark Sapp. Id.; Herbert Decl. Ex. B
3  (copies of the restraining order papers). These papers included an actual restraining order,
4  rather than an application, as the papers state at the bottom "This is a Court Order." Herbert
5  Decl. Ex. B.[3]

6  Plaintiff states in his declaration that Officers had fifteen minutes to conduct an
7  investigation into the restraining order, which he alleges was incomplete, and that Ms. Maya
8  did have any "recognized injuries or bruises" when the Officers talked with her. Declaration
9  of Anthony Webb in support of Opp'n to Mot. for Summary Judgment ("Webb Decl.") (dkt.
10 90) ¶ 25.

11 As Officer Herbert was speaking to Ms. Maya and the hotel front desk person and
12 reviewing the papers provided by Ms. Maya, Plaintiff began walking down the stairs and into
13 the hotel lobby. Herbert Decl. ¶ 5. Officer Dudy had stepped outside onto the street to
14 handle another matter. Herbert Decl. ¶ 5; Dudy Decl. ¶ 5. Ms. Maya identified Plaintiff for
15 Officer Herbert. Herbert Decl. ¶ 5. Plaintiff approached Officer Herbert and Ms. Maya. Id.
16 Officer Herbert asked Plaintiff to put his hands over his head. Id. Plaintiff complied. Id.
17 Officer Herbert then took a key out of Plaintiff's right hand. Id. Officer Herbert asked
18 Plaintiff to bring his hands down and put them behind his back. Id. Plaintiff began
19 complying, and Officer Herbert took Plaintiff's upper right arm and began turning Plaintiff to
20 his left, towards the mailboxes on the wall. Id. Officer Herbert states he intended to detain
21 Plaintiff, so that he could determine whether a valid restraining order had been violated and

---

[3] In his Request for Judicial Notice Ex. A, Plaintiff attaches documents that include Ms. Maya's application for a restraining order against him, and an actual restraining order against an individual named Mark Sapp. In these documents, the documents relating to Plaintiff state at the bottom "This is not a Court Order." As discussed *supra* n.2, these documents are not properly before the Court. Moreover, given all the events, this does not affect the outcome of the case. Even if the Officers only saw an application for a restraining order against Plaintiff, given the earlier call on October 14 regarding Plaintiff's alleged assault on Maya, it would still be reasonable for the officers to attempt to question Plaintiff about the incident. Finally, there is no reason to believe the papers provided by Herbert in his Declaration are not the same photocopies provided to him by Ms. Maya at the scene, as Plaintiff points to no evidence undermining this conclusion.

1  whether Plaintiff had assaulted Ms. Maya. Id. It does not appear that Officer Herbert
2  explained his intention to Plaintiff.

3        Plaintiff then took a quick step to his left, spun to his right and punched Officer
4  Herbert's lip with his left closed fist. Herbert Decl. ¶ 7. Plaintiff then moved rapidly
5  towards the door to the street in an effort to flee Officer Herbert. Id. Officer Herbert caught
6  Plaintiff by his sweatshirt in order to pull him back and prevent him from fleeing. Id.
7  Plaintiff forcefully shoved Officer Herbert. Id. Officer Herbert attempted to perform a leg
8  sweep takedown in order to get Plaintiff to the ground. Id. Officer Dudy overheard the
9  ruckus and came back into the lobby. Herbert Decl. ¶ 7; Dudy Decl. ¶ 5.

10        Plaintiff then violently struggled with both officers for several seconds, continually
11  resisting the officers' attempt to gain control over him. Id. The officers briefly got Plaintiff
12  to the ground, but Plaintiff was able to get up again and threw Officer Dudy to the ground in
13  the process. Id. The officers did not know whether Plaintiff was armed during this
14  encounter, because they did not have time to do a pat-down search. Herbert Decl. ¶ 6. After
15  several seconds more of Plaintiff violently resisting the officers, Defendants were able to
16  force Plaintiff onto his stomach on the ground. Herbert Decl. ¶ 8; Dudy Decl. ¶ 6.

17        Two backup officers arrived as Plaintiff was on his stomach near the door to the
18  street. Id. The officers then attempted to restrain Plaintiff's hands and feet, so that he could
19  be transported to the station. Id. One officer was on Plaintiff's back applying a knee to
20  Plaintiff's upper torso in order to gain control of Plaintiff's arms to handcuff him. Id.
21  Officer Dudy was near Plaintiff's legs, attempting to put Plaintiff's leg in a figure four
22  position to control his legs and put him in leg restraints. Id. Officer Herbert and another
23  officer were on their feet assisting. Id. Plaintiff continued to resist by refusing to allow the
24  officers to take control of his arms and by kicking his legs. Id.

25        After he had been successfully restrained, Plaintiff was escorted out of the hotel lobby
26  and into an SFPD transport vehicle. Herbert Decl. ¶ 9; Dudy Decl. ¶ 7. About five minutes
27  passed from the time Officer Herbert first encountered Plaintiff and the officers escorted
28

4

Plaintiff from the hotel.  Herbert Decl., Ex. D (Video Surveillance from Vincent Hotel, Oct. 21. 2009).

A video recording of the incident was obtained from the Vincent Hotel's surveillance system.  Herbert Decl. Ex. D.  That video depicts Plaintiff's arrest as described above and in the Declarations of Officer Herbert and Officer Dudy.  Id.  The video also appears to show an officer using his legs to subdue Plaintiff when Plaintiff was on the ground.  Herbert Decl. Ex. D.  Both Officer Herbert and Officer Dudy were injured during the struggle.  Officer Herbert had a cut on his lip and injured his right hand.  Herbert Decl. ¶ 10.  Officer Dudy injured his left knee and left hand.  Dudy Decl. ¶ 8.  At his deposition, Plaintiff refused to answer questions regarding whether he resisted the officers in any way, though he did testify that he did not hit either officer.  Declaration of Bradley Russi in support of Mot. for Summary Judgment ("Russi Decl.") (dkt. 70) Ex. A (Webb Deposition Transcript) at 44:12-22; 47:24-48:12; 52:25-53:5; 85:16-24.  Plaintiff states he also sustained injuries from the encounter, including an injury to his leg that required a brace and physical therapy.  Opp'n at 19.

Plaintiff claimed for the first time at his deposition that after he was escorted to the SFPD transport van, two officers jumped in the van, closed the door, and beat him up for no reason.  Russi Decl. Ex. A at 52:3-12; 53:21-54:10.  Plaintiff testified that the officers who beat him up in the van hit him in such a way that the injuries were not visible.  Id. at 50:23-25.  Plaintiff did not identify Officers Herbert and Dudy as the individuals who allegedly used force on him in the transport van.  Id. at 52:3-12; 53:21-54:10.  Officers Herbert and Dudy state they did not use force on Plaintiff after he was restrained in the hotel lobby and did not get in the transport van with Plaintiff.  Herbert Decl. at ¶ 9; Dudy Decl. at ¶ 7.  Plaintiff does not discuss these allegations in his argument in his Opposition.

Officer Herbert completed a police report regarding the incident.  Herbert Decl. ¶ 11; Dudy Decl. ¶ 9.  In that report, Officer Herbert recounted that Ms. Maya presented Defendants a restraining order regarding Plaintiff.  Id.  Officer Herbert mistakenly noted in the report the case number for the restraining order against the other individual, Mark Sapp

(Case No. 570008), as opposed to the restraining order Ms. Maya presented regarding Plaintiff (Case No. 570007). Id. The restraining order regarding Plaintiff was booked into evidence by Officer Dudy. Dudy Decl. at ¶ 9.

The San Francisco District Attorney charged Plaintiff with four counts: (1) felony battery of a peace officer in violation of Section 243(c)(2) of the California Penal Code; (2) felony resisting or obstructing a peace officer in violation of Section 69 of the Penal Code; (3) misdemeanor battery of a peace officer in violation of Penal Code Section 243(b); and (4) misdemeanor resisting or obstructing a peace officer in violation of Penal Code Section 148(a)(1). Defendants' Request for Judicial Notice ("RJN") (dkt. 70) Ex. A (Transcript of Feb. 10, 2010 Preliminary Hearing) at 3:1-4.[4]

The Judge at the Preliminary Hearing discharged Count 1 of the Complaint, finding there was insufficient evidence to show the sort of injury that would bring the action within the ambit of section 243(c)(2). Id. at 48:18-22. It also appears the charges were all dismissed at one point, when the Assistant District Attorney failed to appear at the hearing, though the Assistant District Attorney shortly re-filed the charges. Opp'n at 4-5. Plaintiff then entered a plea of no contest to violating Section 69 of the Penal Code, and to a violation of his probation arising out of the arrest at issue in this case. RJN Ex. B (Transcript of Defendant's June 14, 2010 Plea Hearing).

The court found a factual basis for this plea based on the evidence presented by the district attorney at the preliminary hearing. RJN Ex. B at 6:11-18. The remaining charges against Plaintiff were dismissed as part of the plea deal. RJN Ex. B at 6:24-7:1. Plaintiff also admitted that this incident violated the terms of his probation, in violation of Section 11352(a) of the Health and Safety Code. RJN Ex. B at 9:8-10. The court also found a factual basis for this plea. RJN Ex. B at 9:11-12.

---

[4] The Court GRANTS Defendants' Request for Judicial Notice because the attached documents are public documents not subject to reasonable dispute. Del Puerto Water Dist. v. U.S. Bureau of Reclamation, 271 F. Supp. 2d 1224, 1243 (E.D. Cal. 2003); see also California ex rel. RoNo, LLC v. Altus Finance S.A., 344 F.3d 920, 931 (9th Cir. 2003).

Plaintiff was in custody from the date of the arrest in October 2009 until December 2010. Plaintiff filed a lawsuit in this court on December 22, 2009. See Webb v. Herbert, et al., No. 09-6008. That suit arose out of the same factual scenario as the present case. RJN Ex. C (Complaint dated Jan. 20, 2010). On November 10, 2010, Judge White entered an order dismissing Plaintiff's claims. Webb v. Nelson, No. 09-6008, 2010 WL 4918736 (N.D. Cal. Nov. 10, 2010). The court found that Plaintiff's false arrest claim was barred by Heck v. Humphrey, 512 U.S. 477 (1994), because Plaintiff's charges or conviction had not been invalidated. Id. at *2. The court dismissed that claim "without prejudice to refiling once the claims accrue." The court dismissed Plaintiff's excessive force claim for failing to allege sufficient facts. Id.

Plaintiff initially filed this case in the San Francisco Superior Court on July 1, 2010, while his original federal lawsuit was still pending. On December 28, 2010, Plaintiff filed a First Amended Complaint, which was subsequently served on Defendants. Dkt. 1-1 (Amended Complaint). Defendants removed the case to this court on January 31, 2011. Dkt. 1. Plaintiff contends that Officers Herbert and Dudy falsely arrested him based on a restraining order that Ms. Maya had obtained against Mark Sapp. Dkt. 1-1, p. 4. Plaintiff's theory appears to be in main part based on Officer Herbert's mistaken notation of the civil restraining order case number in the police report. Plaintiff alleges the following claims: (1) a "Civil Rights Violation," presumably under 42 U.S.C. § 1983 for unlawful arrest and excessive force incident to arrest in violation of the Fourth Amendment; (2) false arrest under state law; (3) "excessive force," presumably a battery claim under state law; (4) "fraudulent police report;" (5) violation of the equal protection clause; and (6) violation of the due process clause. Dkt. 1-1 at 7:2-4. Defendants Herbert and Dudy now move for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter

7

1 of law." Fed. R. Civ. P. 56(c). A principal purpose of the summary judgment procedure is to
2 isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317,
3 323-24 (1986). The burden is on the moving party to demonstrate that there is no genuine
4 dispute with respect to any material fact and that it is entitled to judgment as a matter of law.
5 Id. at 323. A genuine issue of fact is one that could reasonably be resolved in favor of the
6 nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is
7 "material" only if it could affect the outcome of the suit under the governing law. Id. at 248-
8 49.

9 If the moving party does not satisfy its initial burden, the nonmoving party has no
10 obligation to produce anything and summary judgment must be denied. Nissan Fire &
11 Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). If, on the other hand,
12 the moving party has satisfied its initial burden of production, then the nonmoving party may
13 not rest upon mere allegations or denials of the adverse party's evidence, but instead must
14 produce admissible evidence that shows there is a genuine issue of material fact for trial. Id.
15 at 1103. The nonmoving party must "set out 'specific facts showing a genuine issue for
16 trial.'" Celotex, 477 U.S. at 324-25 (quoting Fed. R. Civ. P. 56©). If the nonmoving party
17 fails to make this showing, the moving party is entitled to judgment as a matter of law. Id. at
18 323.

19 When deciding a summary judgment motion, a court must view the evidence in the
20 light most favorable to the nonmoving party and draw all justifiable inferences in its favor.
21 Anderson, 477 U.S. at 255. However, it is not a court's task "to scour the record in search of
22 a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)
23 (internal quotations omitted). Rather, a court is entitled to rely on the nonmoving party to
24 identify with reasonable particularity the evidence that precludes summary judgment. See id.

25 **III.   DISCUSSION**

26 Defendants move for summary judgment on several grounds: (1) Plaintiff's claims are
27 barred as an impermissible collateral attack on his valid convictions under Heck v.
28 Humphrey, 512 U.S. 477 (1994); (2) Defendants lawfully detained and arrested Plaintiff; (3)

8

Defendants have qualified immunity; (4) Defendants' conduct during the arrest did not constitute excessive force; (5) Defendants have qualified immunity on this claim as well; (6) Plaintiff fails to plead facts sufficient to state a claim for a due process violation, an equal protection violation or a "fraudulent police report" claim. As Plaintiff's claims are barred as an impermissible collateral attack on his valid convictions under Heck, the Court need not reach the additional issues.

### A. Heck v. Humphrey

Heck v. Humphrey, 512 U.S. 477, 486 (1994), provides that in order to recover damages for an allegedly unconstitutional conviction, or for other harm caused by actions which would render a conviction or sentence invalid, a plaintiff must prove that his conviction or sentence is no longer valid, as a precondition to bringing suit. See also Guerrero v. Gates, 442 F.3d 697, 703-04 (9th Cir. 2006). California courts apply the same rule to claims under state law that collaterally attack a valid conviction. See Lujano v. County of Santa Barbara, 190 Cal. App. 4th 801, 806-08 (2010).

Section 69 of the Penal Code provides:

> Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment.

Cal. Penal Code § 69. To prove that a defendant is guilty of violating this section, the prosecution must prove the officer was acting lawfully at the time of the violation. People v. Cruz, 44 Cal. 4th 636, 673 (2008) ("[I]t is a well-established rule that when a statute makes it a crime to commit any act against a peace officer engaged in the performance of his or her duties, part of the corpus delicti of the offense is that the officer was acting lawfully at the time the offense was committed.") (quotation marks omitted). This is also reflected in the Judicial Council of California Criminal Jury Instruction, which states that to prove a Section 69 violation, "the People must prove that: . . . When the defendant acted, the officer was

9

performing (his/her) lawful duty." Judicial Council of California Criminal Jury Instructions, Series 2652 (2011).

Plaintiff pled no contest to a violation of Section 69. RJN Ex. B. A plea of nolo contendere or "no contest" has the same effect as a guilty plea or other conviction for the purposes of applying the Heck doctrine. Szajer v. City of Los Angeles, 632 F.3d 607, 610, 612 (9th Cir. 2011) (no contest plea to felony weapons possession barred later civil action alleging illegal search); Nuno v. County of San Bernardino, 58 F. Supp. 2d 1127, 1138-39 (C.D. Cal. 1999) (holding that Heck doctrine applies when plaintiff convicted by no contest plea).

Thus, all of Plaintiff's claims are barred by the Heck doctrine, because all his claims turn on the contention either that (1) Defendants were acting unlawfully at the time of his arrest or (2) he did not resist the arrest and there was not probable cause to arrest him. These contentions directly attack the validity of his conviction, and thus, run afoul of Heck.

### 1.   Claims Based on Officer's Unlawful Conduct

Plaintiff bases his claims that his arrest was unlawful under Section 1983, and state law false arrest doctrine on his contention that Defendants "did unlawfully arrest Plaintiff base[d] upon Mark Sapp restraining order information." Dkt. 1-1 at 6-7. He bases his equal protection and due process claims on the allegation that Defendants "failed to verify Mark Sapp restraining order information." Dkt. 1-1 at 10-11. Plaintiff bases his fraudulent police report claim on the contention that "defendants did falsify th[eir] police reports and witness[] statements and compel witnesses to sign allege [sic] false statements alleg[ing] in incident report that plaintiff punch[ed] assisting officers . . . ." Dkt. 1-1 at 9.

These claims contest the validity of Plaintiff's arrest and conviction for violating Section 69 of the Penal Code because Plaintiff contends that Defendants were acting unlawfully when he was arrested – by failing to investigate and acting without reasonable suspicion – or they altered evidence that formed the basis of his conviction. This is barred by Heck and corresponding state authority. See, e.g., Guerrero, 442 F.3d at 703 (claims for wrongful arrest, malicious prosecution, and conspiracy among officials barred by narcotics

1  possession convictions; <u>Dobshinsky v. Piccinni</u>, No. 06-4193, 2006 WL 3784624, at *2
2  (N.D. Cal. Dec. 21, 2006) (claim for falsifying police reports barred by <u>Heck</u> because called
3  into question plaintiff's conviction for resisting arrest).
4        This is because an element of the offense, violation Section 69, is that the officer was
5  acting lawfully in pursuing and carrying out the arrest. If Defendants' arrest of Plaintiff was
6  unlawful, or they acted unlawfully in some way while carrying out and pursuing the arrest,
7  Plaintiff's conviction for a violation Section would clearly be contested. As his conviction
8  has not been overturned or otherwise expunged (and because he admitted to a probation
9  violation arising out of the same conduct), the <u>Heck</u> bar clearly applies to these claims. <u>See</u>
10 <u>Szajer</u>, 632 F.3d at 611.

      **2.      Excessive Force and State Law Battery Claims are Barred**

12       A criminal conviction for resisting arrest does not necessarily bar an excessive force
13 claim under Section 1983 as an attack on the validity of the conviction because an excessive
14 force claim may "not negate the lawfulness of the initial arrest attempt, or negate the
15 unlawfulness of [the plaintiff's] attempt to resist it . . . ." <u>Hooper v. County of San Diego</u>,
16 629 F.3d 1127, 1133 (9th Cir. 2011). Still, such a claim may be barred by <u>Heck</u> to the extent
17 the claim alleges the plaintiff "offered no resistance," that the plaintiff "posed no reasonable
18 threat of obstruction to the officers," and that "the officers had no justification to employ any
19 force against him . . . ." <u>Id.</u> at 1132.
20       Plaintiff contends that he offered no resistance, or no serious resistance, to the arrest
21 and should not have been arrested. "Plaintiff conten[ds] that he never was aggressive by
22 throwing straight punches or straight kicks directly at any officer or trying to hurt or wound
23 any officer [or] to subdue any officers to the ground violently, the CD evidence show[s] that
24 plaintiff was trying to protect himself by covering his head and face as the amount [of] force
25 was used to protect himself." Opp'n at 11. Putting aside whether this statement comports
26 with the video evidence of Plaintiff's arrest, his theory that he was not resisting or posed no
27 reasonable threat of obstruction to the officers, and the officers had no reasonable
28 justification to employ any force against him clearly undermines his conviction under Section

69 and his admission of violating his probation. Thus, these claims are barred by Heck and corresponding state authority. See Hooper, 629 F.3d at 1132.

### B. Section 1016 does not preclude Heck

During Plaintiff's Plea Hearing, Judge Chan stated: "And do you understand that by accepting your plea of no contest it has the same affect as a guilty plea, and that the only difference is that you cannot have that admission used against you if there is a civil suit based on the basis of the same conduct." RJN Ex. B at 5:25-6:1. Perhaps understandably, Plaintiff now argues that the fact of his no contest plea cannot be "used against" him to bar his claims under Heck. This, though, is not the law. Section 1016, which is the basis for Judge Chan's statement, has no effect on the Heck bar. "[F]or purposes of the Heck analysis, a plea of nolo contendere in a California criminal action has the same effect as a guilty plea or a jury verdict of guilty." Nuno v. San Bernardino County, 58 F. Supp. 2d 1127, 1135 (C.D. Cal. 1999) ( plaintiff pled no contest to an underlying criminal charge of resisting and obstructing a police officer in violation of Section 148 of the Penal Code).

In Nuno, the Court explained that "[u]nder section 1016(3), a nolo plea to a felony offense has the same legal effect as that of a plea of guilty for all purposes, but a nolo plea for a misdemeanor offense . . . 'may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based.'" Id. at 1136 (citing Section 1016(3)).[5] There, the plaintiff made the same argument Plaintiff here appears to be making – Section 1016(3) prevents his nolo plea from being used against him in this action, "a civil suit based upon or growing out of the act upon which the criminal prosecution" was based. Id.

The Court disagreed. "Section 1016(3), to the extent it applies in federal court, prevents the use of plaintiff's nolo pleas against him in his action 'as an admission.' Defendants, however, do not seek to use the nolo pleas against plaintiff as admissions.

---

[5] Plaintiff's argument also ignores the fact that he pled nolo contendere to a felony offense. See RJN Ex. B at 5:22-24 ("Mr. Antony Webb, what is your plea to violating Section 69 of the Penal Code as a felony?" "No Contest.") (emphasis added). While the Judge lowered the offense to a misdemeanor for sentencing purposes, it does not appear that this would affect the Heck analysis. Still, as explained above, even if he had pled to a misdemeanor, Heck would still apply.

12

1  Rather, under Heck, what is relevant about plaintiff's nolo pleas and the resulting section 148
2  and 12025(a) convictions is the simple fact of their existence." Id.  Absent evidence that the
3  conviction "has been reversed on appeal, expunged by executive order, invalidated by a state
4  tribunal or is called into question by a federal writ of habeas corpus," Heck bars a plaintiff's
5  claim that would necessarily imply the invalidity of plaintiff's conviction.  Id.  This
6  conclusion has been reached by several other courts.  See, e.g., Wetter v. City of Napa, 07-
7  04583, 2008 WL 62274, at *3 (N.D. Cal. Jan. 4, 2008) (rejecting argument that Section 1016
8  precluded use of a no contest plea for Heck purposes); Rodriguez v. City of Modesto, 10-
9  1370, 2011 WL 2224765, at *9 (E.D. Cal. Jun. 7, 2011) (same).

10  The situation here is analogous, and the same reasoning applies.  There is no evidence
11  that Plaintiff's conviction has been overturned or expunged.  As explained *supra*, while at
12  some point the charges were dismissed because of the ADA's failure to appear, the charges
13  were re-filed and the conviction was based upon those re-filed charges.  Opp'n at 5.  Plaintiff
14  has submitted no evidence that the conviction has been disturbed in any way.  Thus, Section
15  1016 does not bar the application of Heck.

### C. Heck Applies even though Plaintiff No Longer in Custody

17  Plaintiff appears to contend that his claims are not barred by Heck because he is no
18  longer in custody.  See Opp'n at 10 ("It's defendants contention that plaintiff is still barred
19  by the "Heck" case plaintiff is no longer in custody see "Huey" . . . in fact, plaintiff has
20  exceeded his criminal realm.").  Courts have recognized certain limited exceptions to Heck
21  where a former prisoner plaintiff challenges loss of good-time credits, revocation of parole or
22  similar matters, and immediately pursued relief after the incident giving rise to those claims,
23  but could not seek habeas relief only because of the shortness of his prison sentence.  See
24  Guerrero v. Gates, 442 F.3d 697, 705 (9th Cir. 2006).  First of all, Plaintiff is not challenging
25  loss of good-time credits, revocation of parole, or any similar matter.

26  Second, even if he was pursuing the type of challenge allowed by the exception, a
27  "self-imposed" failure to timely pursue habeas relief will not protect a plaintiff from the
28  Heck Rule.  Guerrero, 442 F.3d at 705.  Here, Plaintiff did not pursue habeas relief while in

13

custody from October 2009 until December 2010. Supp. Russi Decl. Ex. A at 68:24-69:1. Thus, the exception would not apply, as any failure to timely pursue habeas relief was "self-imposed." "The fact that [a § 1983] plaintiff is no longer in custody and thus cannot overturn his prior convictions by means of habeas corpus does not lift Heck's bar." Guerrero, 442 F.3d at 704. Thus, the fact that Plaintiff is no longer in custody does not relieve him of the Heck bar.

Given that all of plaintiff's claims challenge the validity of his Section 69 conviction, which there is no evidence has been disturbed in any way, Heck bars all of Plaintiff's claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for summary judgment in its entirety.

**IT IS SO ORDERED.**

Dated: December 12, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE